IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

DANIEL LEE JORDAN,

    Petitioner,

v.                                   Case No. 2:13-cv-06864

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

    Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

On April 2, 2013, the Clerk's Office received a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1), filed by Daniel Lee Jordan (hereinafter "the petitioner"). Also pending before the court is the respondent's Motion for Summary Judgment (ECF No. 16). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY OF PETITIONER'S CASE

On July 13, 2010, following a jury trial in the Circuit Court of Kanawha County, the petitioner was found guilty of one count of First Degree Sexual Abuse, in violation of West Virginia Code § 61-8B-7, and one count of Sexual Abuse by a Person of Trust, in violation of West Virginia Code § 61-8B-5. (ECF No. 17 at 2). On August 13, 2010, the petitioner was sentenced to a total of 15-45 years in prison, followed by 40 years of supervised release, pursuant to West Virginia Code § 61-12-26. (*Id.*)

The petitioner's judgment was affirmed by the Supreme Court of Appeals of West Virginia (the "SCAWV") on June 24, 2011.  (*State v. Jordan*, Case No. 101633).  (*Id.* at 2; ECF No. 16, Ex. 2).  The petitioner's direct appeal asserted that the petitioner's confrontation rights under the Sixth Amendment to the United States Constitution and Article III, Section 14 of the West Virginia Constitution were violated when a recording from an interview performed by a hospital-employed social worker was admitted at trial for the truth of the matter asserted.  (*Id.*)  The SCAWV declined to rule upon whether the recorded interview was admitted in violation of the petitioner's confrontation rights, but held that, even if it was, the admission of the recorded interview was harmless error in light of other substantial evidence adverse to the petitioner.  (*Id.*)  According to the respondent's Memorandum of Law, the petitioner's request for rehearing of his case was denied by the SCAWV on September 12, 2011.  (ECF No. 17 at 2).

The petitioner filed a Petition for a Writ of Habeas Corpus in the Circuit Court of Kanawha County on July 26, 2012 (Case No. 12-MISC-143), which was denied on March 5, 2013.  (*Id.* at 3.)  On January 17, 2014, the SCAWV affirmed the judgment of the Circuit Court in a Memorandum Decision.  (ECF No. 6, Ex. 1).  According to the Memorandum Decision, the petitioner's habeas appeal raised claims of ineffective assistance of counsel, including a claim concerning the failure to have the forensic interview of the minor victim excluded at trial.  As addressed *infra*, despite his federal proceedings being held in abeyance in order for the petitioner to exhaust his state court remedies concerning these other claims, the petitioner ultimately elected only to pursue the Sixth Amendment Confrontation Clause claim raised in his initial section 2254 petition and, thus, he has waived his right to pursue federal habeas corpus relief on any other claims.

The petitioner filed the instant section 2254 petition on April 2, 2013. (ECF No. 1). As noted above, the plaintiff's sole claim in the instant petition states as follows:

> The trial court permitted the jury to watch a pre-recorded interview that was conducted for investigatory purposes. The video was admitted for the truth of the matter asserted. The witness was unavailable and never testified. I never had a prior opportunity to cross-examine the witness. Most of the state's case and all of its direct evidence came into evidence through the playing of this forensic interview conducted by Mrs. Maureen Runyon. Mrs. Runyon knew at the time I was being investigated by the Kanawha County Sheriff's Office for alleged sexual abuse and that's why the Kanawha County Sheriff's Office requested her to do the interview. She stopped at one point to solicit questions from the police officer attending the interview. At a suppression hearing before the trial I argued that the interview was inadmissible testimony. The trial [court] ruled it admissible.

(*Id.* at 5).

On April 22, 2013, the undersigned directed that the petition be served on the respondent and a response was ordered by June 7, 2013. (ECF No. 5). On June 6, 2013, the respondent filed a Motion to Stay Proceedings (ECF No. 6), indicating that the petitioner's appeal of the denial of his state habeas corpus petition was pending before the SCAWV.

On November 1, 2013, the presiding District Judge granted the respondent's Motion to Stay and held this matter in abeyance until January 30, 2014, when the petitioner filed a Motion to Proceed (ECF No. 9). On March 19, 2014, the undersigned lifted the stay and ordered the respondent to file an answer or other pleading by May 5, 2014. (ECF No. 12). The respondent subsequently filed an Answer (ECF No. 15), the instant Motion for Summary Judgment, with exhibits (ECF No. 16), and a Memorandum of Law in support thereof (ECF No. 17).

On June 13, 2014, the petitioner was advised by the court, pursuant to the holding in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), of his right and obligation

3

to respond to the respondent's Motion for Summary Judgment. (ECF No. 18). On July 10, 2014, the petitioner filed Responses to the Answer and Motion for Summary Judgment (ECF Nos. 20 and 21). The respondent did not file a reply brief. This matter is ripe for adjudication.

## STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts. The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct

governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings. *See*, *e.g.*, *Blackledge v. Allison*, 431 U.S. 63, 81 (1977); *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991). Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.).

## **FACTUAL BACKGROUND AND TRIAL TESTIMONY**

The following factual summary is taken from factual findings made by the SCAWV in its Memorandum Decision affirming the petitioner's conviction (ECF No. 16, Ex. 2):

> In February of 2010, petitioner and his wife babysat his wife's four-year-old female cousin, M.B. The next day, M.B. reported to her mother an incident of sexual contact with petitioner. M.B.'s mother contacted police and M.B. was interviewed by Deputy C.E. O'Neal of the Kanawha County Sheriff's Department. Separately, M.B.'s mother also reported the allegation to M.B.'s pediatrician, who recommended that M.B. undergo a physical examination at Charleston Area Medical Center's Women and Children's Hospital. Detective Samantha Ferrell of the Sheriff's Department told M.B.'s mother not to schedule this examination because the detective would make the arrangements. Detective Ferrell made an

5

>appointment for M.B. to be evaluated at the Child Advocacy Center at Women and Children's Hospital.
>
>At the Child Advocacy Center, M.B. was interviewed by social worker Maureen Runyon. The interview was video-recorded and Detective Ferrell observed from another room. Ms. Runyon asked M.B. questions designed to elicit whether M.B. had been subjected to inappropriate sexual contact. Although unresponsive to most of Ms. Runyon's questions, M.B. indicated that petitioner had her touch his penis while they were in a bathroom at petitioner's home. During the interview, Ms. Runyon left the interview room to converse with Detective [Ferrell]. At a suppression hearing, Ms. Runyon and Detective Ferrell both testified that Runyon had inquired of the detective whether there were any other questions to ask M.B. Detective Ferrell testified that she "believe[s]" she told Ms. Runyon what M.B. had told Deputy O'Neal, and that she had Ms. Runyon ask questions so that the detective would not need to re-interview the child. Ms. Runyon resumed interviewing M.B. and obtained additional information from the child, including that M.B. had touched petitioner "on the clothes" over his genitalia instead of "on the skin."
>
>M.B. was then given a physical examination by a doctor at the Child Advocacy Center, but the physical examination produced no evidence. At the conclusion of the complete evaluation, Ms. Runyon recommended that M.B. receive counseling and referred the matter back to the Sheriff's Department.
>
>Petitioner gave two statements to police that were audio recorded and played for the jury at trial. Initially, petitioner denied any sexual contact with M.B. However, as the questioning progressed, he stated that he was masturbating in a small bathroom off of his bedroom when M.B. walked into the room unexpectedly. Petitioner indicated that he told her to leave and he stood up and ejaculated. Petitioner says he tried to pull up his pants, but M.B. reached out and "grabbed" his penis. Petitioner testified similarly at trial.
>
>Counsel for both sides agreed that M.B. was unavailable to testify at trial. The circuit court denied a defense motion to suppress and allowed the State to play at trial the videotape of Ms. Runyon's interview of M.B. The circuit court precluded the witnesses from testifying as to what M.B. had told them.

(ECF No. 16, Ex. 2 at 2). These factual findings by the state court are presumed to be correct, and must be rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

6

A review of the trial transcript reveals that Ms. Runyon testified that interviews, such as the one she conducted with M.B., are part of a standard evaluation process in order to make recommendations for future treatment. (ECF No. 16, Ex. 3 at 32). Ms. Runyon further testified that such recorded interviews are frequently observed by treating physicians and serve to prevent an abused child from having to repeat his or her story during treatment. (*Id.* at 40, 157). Ms. Runyon further testified that she frequently consults with anyone observing the interview – be it law enforcement, a physician, or another social worker - to ensure that she had asked all pertinent questions. (*Id.* at 40). Ms. Runyon further testified that, after consulting with Detective Ferrell, she resumed questioning M.B. solely to obtain more information for her treatment, in particular, to determine the necessity and extent of the proposed physical examination. (*Id.* at 55).

Although M.B. was largely unresponsive during the interview, when asked whether "any boys ever asked her to give them touches here, between their legs," M.B. said that "Daniel" did. (*Id.* at 83-84). Ms. Runyon also used dolls to discuss the incident and M.B. stated that Daniel had her touch him "on the clothes" of his "wiener." (*Id.* at 93, 96).

At trial, M.B.'s mother also testified that, after returning home from the petitioner's house, M.B. was acting unusual towards her father and brother. (*Id.* at 148-149).

## **ANALYSIS**

The petitioner's section 2254 petition contains only one claim; that is, that, at trial, the court improperly admitted a video-taped interview of the alleged victim by a social worker, which was conducted for investigatory purposes, in lieu of the live

7

testimony of the alleged victim, who was unavailable. The petitioner asserts that the admission of this pre-recorded interview, without the opportunity to cross-examine the alleged victim, violated his rights under the Confrontation Clause of the Sixth Amendment. (ECF No. 1 at 5). The petitioner unsuccessfully raised this claim in his direct appeal. (ECF No. 1, Attachments 1-3). Accordingly, it is exhausted.

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const., Amend. VI. This right was secured to state court defendants under the Fourteenth Amendment, as discussed in the Supreme Court's decision in *Pointer v. Texas*, 380 U.S. 400 (1965). In *Davis v. Alaska*, 415 U.S. 308, 315 (1974), the Court emphasized that the essential purpose of the Confrontation Clause "is to secure for the opponent the opportunity of cross-examination."

In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." The SCAWV adopted this ruling in *State v. Mechling*, 633 S.E.2d 311 (W. Va. 2006). To determine whether a statement is testimonial, one must ask whether the declarant "intend[ed] to bear testimony against the accused." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004). That is, "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *Id.*

The respondent's Memorandum of Law in support of his Motion for Summary Judgment further notes that "whether or not a statement is testimonial depends on its primary purpose, and it is 'the *declarant's statements*, not the interrogator's questions,

8

that the Confrontation Clause requires [the Court] to evaluate.'" *Davis v. Washington*, 547 U.S. 813, 822 n.1 (2006) (emphasis added). (ECF No. 17 at 16). The respondent's Memorandum of Law further asserts:

> Primary purpose is determined by an inquiry not into the actual purposes of the particular parties, but the purpose that a reasonable participant would have had – the inquiry is an objective one, focusing on the understanding and purpose of a reasonable victim in the actual victim's circumstances. [*Michigan v. Bryant*, 131 S. Ct. 1143, 1148 (2011)]. Of particular importance is whether the purpose is not to create a record for trial:
>
>> [T]here may be *other* circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony. In making the primary purpose determination, standard rules of hearsay, designed to identify some statements as reliable, will be relevant. Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal court rules of evidence, not the Confrontation Clause.
>
> *Id.* at 1155. Indeed, the Court in *Bryant* suggested that these "*other* circumstances" may involve statements that are not considered hearsay, specifically where "hearsay rules similarly rest on the belief that certain statements are, by their nature, made for a purpose other than use in a prosecution." *Id.* at n.9 (offering Federal Rule of Evidence 803(4), Statements for Purposes of Medical Diagnosis or Treatment as an example). Furthermore, though statements may be given and obtained via mixed motives, the primary purpose of the interrogation determines whether it is testimonial. *Id.* at 1161 (acknowledging that officers and victims are likely to have mixed motives in an on-going emergency but finding the interrogation's primary purpose was still non-testimonial).

(*Id.* at 17). The respondent also cites a decision by the United States Court of Appeals for the Fourth Circuit in which the court held that the primary purpose of an interview of a child by a social worker was non-testimonial. *See United States v. DeLeon*, 678 F.3d 317 (2012) (vacated and remanded on other grounds). The respondent urges the court to find that the actual purpose of Maureen Runyon's interview of M.B. was for medical diagnosis and treatment. The respondent's Memorandum of Law states:

9

> M.B. had already been questioned by police officials prior to her interview with Ms. Runyon, a social worker specializing in sexual abuse at the Child Advocacy Center at the Charleston Area Medical Center's Women and Children's Hospital. Ms. Runyon was not a police official nor had any connection with a state agency and specifically testified that not just the primary purpose – but the sole purpose – of her interview was to ensure M.B.'s wellbeing and to determine what had happened so that additional medical evaluation and treatment could be provided if necessary. Furthermore, M.B. was a four-year old child at the time – one can safely assume, no matter her level of sophistication, that her purpose in answering, or more often not answering, questions from Ms. Runyon, was not to produce a statement to substitute for testimony. * * * After the interview, Ms. Runyon recommended counseling and the information obtained from the interview was available to the doctor who performed M.B.'s subsequent physical exam at the same Child Advocacy Center. Thus, the actual primary purpose of the interview appears from the record to have been for medical diagnosis and treatment, not to produce out-of-court statements to substitute for testimony.

(*Id.* at 19-20). Thus, the respondent contends that, despite the fact that the SCAWV declined to make a finding concerning whether the interview was testimonial in nature, the Court could have made such a finding without running afoul of the clearly-established precedent in *Crawford* and its progeny. (*Id.* at 20-21).

On the other hand, the petitioner's Response to the respondent's Motion for Summary Judgment contends that Maureen Runyon's interview of M.B. is "exactly the kind of substitute for live testimony the United States Supreme Court was concerned about in *Crawford v. Washington* [citation omitted]." (ECF No. 21 at 2). The petitioner contends that "Courts in over a dozen states agree that child forensic interviews performed by social workers and other professionals in child advocacy centers are inadmissible pursuant to the Supreme Court's ruling in *Crawford*; particularly where,

as in the petitioner's case, law enforcement arranged, viewed and actively participated in the interview process." (*Id.*; other citations omitted).[1]

The petitioner emphasizes that "Child Advocacy Centers, as defined by West Virginia Code Section 49-1-3 (2001), are members of multidisciplinary teams who *collaborate with law enforcement and prosecutors to investigate alleged sexual abuse through* forensic interviews and advocate for the child throughout the rest of the investigation – including at '*subsequent legal proceedings.*'" (ECF No. 21 at 4, citing language from various sections of W. Va. Code § 49-1-3) (emphasis added by petitioner). The remainder of the petitioner's Response largely consists of analysis of the Supreme Court's decision in *Bryant, supra*, and the petitioner's attempts to distinguish the facts of that case from those of his own, focusing on the differences in the environment in which the statements were made and the fact that, in the petitioner's case, the alleged victim had already been interviewed by the police. (ECF No. 21 at 5-7). The petitioner contends that "whatever Ms. Runyon may have represented pretrial, the only purpose her interview could have served was to make a record of past events because she largely asked M.B. to repeat allegations already known to her and the other investigators." (*Id.* at 6). His Response further argues:

> The differences between the interview in the petitioner's case and the non-testimonial interrogation in *Bryant* are just as stark and apparent as the similarities between this interview and these ones ruled to have violated the Confrontation Clause in other states (citation omitted) . . . As such, there can be little doubt that the introduction of the video taped interview in the petitioner's trial, without an opportunity for cross-examination violated his right to confront his accusers guaranteed by the Sixth Amendment to the United States Constitution. . . .

---

[1] The undersigned notes that the petitioner asserts that 14 other state courts have found that statements acquired through forensic interviews in circumstances similar to the instant case were testimonial and, therefore, subject to the guarantees of the Confrontation Clause. (ECF No. 21 at 4-5).

11

(*Id.* at 7).

Although the SCAWV did not make a finding as to whether M.B.'s pre-recorded interview was testimonial, the Court found that, even if it were testimonial, it was harmless error for the trial court to admit the recording. Thus, this court must determine whether that finding was appropriate under clearly-established federal law. As noted by the SCAWV in its Memorandum Decision:

> The Supreme Court left open in *Crawford* whether Confrontation Clause violations are subject to harmless error analysis. *Crawford*, 541 U.S. at 42 n.1. Virtually all courts have found that harmless error does apply to *Crawford* violations.[2] 30A Charles Alan Wright, et al., *Federal Practice and Procedure*, § 6371.2 (Supp. 2010). Under *Chapman v. California*, 386 U.S. 18 (1967), a violation of a constitutional right is harmless if the State proves the violation was harmless beyond a reasonable doubt. This Court adopted the standard set forth in *Chapman* when it held in Syllabus Point 20 of *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974), that "[e]rrors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable probability that the violation could have contributed to the conviction." *State v. Farmer*, 193 W. Va. 84, 90, 454 S.E.2d 378, 384 (1994).
>
> Upon a review of the record, we conclude that even assuming M.B.'s interview should have been excluded under *Crawford* and *Mechling*, any error was harmless beyond a reasonable doubt. A review of the transcript of the interview reveals that M.B. failed to respond to many of Ms. Runyon's questions. At most, M.B. indicated in response to Runyon's questions that petitioner had her touch his penis through his clothing. When asked, "did anything come out of" petitioner's penis, M.B. nodded negatively. By contrast, petitioner's own statements to police and his trial testimony were far more inculpatory. He admitted that the four-year old M.B. touched his penis while he was masturbating and ejaculating. He stated that the girl may have gotten ejaculate on her. Although petitioner claimed that he had not asked M.B. to touch him, the jury could weigh petitioner's credibility in light of the circumstances. (Footnote omitted). Moreover, the State presented corroborating evidence including the testimony of M.B.'s mother that M.B. spent the night in petitioner's care and behaved differently upon returning home. M.B.'s mother testified that, upon returning home, M.B. was a little quieter than usual; would not

---

[2] Although not cited by the SCAWV, the respondent notes that the United States Court of Appeals for the Fourth Circuit has found that a *Crawford* violation is subject to harmless error analysis. *See United States v. Banks*, 482 F.3d 733, 741 (4th Cir. 2007).

play with her brother, which was extremely unusual; and "didn't really fool with" [interact] with her father.

(ECF No. 16, Ex. 2 at 2-3).

The respondent's Memorandum of Law in support of his Motion to Summary Judgment asserts that, on collateral review, such as the instant habeas corpus proceeding, "habeas petitioners may secure the writ only if the error 'actually prejudice[d]' them. (ECF No. 17 at 13, citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). In *Brecht*, the Supreme Court clarified that the standard for determining harmless error in habeas proceedings is whether the error "had a substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Thus, even assuming that the admission of M.B.'s interview was incorrect under *Crawford*, it is appropriate for this federal court to assess the prejudicial impact of such alleged error under the *Brecht* standard before granting any habeas relief. *See also, Fry v. Pliler*, 551 U.S. 112, 121-122 (2007) (*Brecht* standard applies in § 2254 proceedings, "whether or not the state appellate court recognized the error and reviewed it for harmlessness under [*Chapman*].")

As noted by the respondent:

> Here, although the [SCAWV] declined to rule whether admitting Ms. Runyon's interview of M.B. violated Petitioner's confrontation rights, the court found that, even if it did, the violation constituted harmless error beyond a reasonable doubt – a significantly higher standard than is required for this Court to find harmless error.
> 
> The [SCAWV] reasoned that the recorded interview was not particularly inculpatory, especially in comparison to Petitioner's own statements and the corroborating testimony of M.B.'s mother. In Ms. Runyon's interview, in addition to being largely unresponsive, the most M.B. indicated was that she touched Petitioner's penis through his clothes.

> M.B. also nodded in the negative that anything came out of Petitioner's penis.
>
> Meanwhile, the [SCAWV] noted that Petitioner admitted that M.B. touched his penis while he was masturbating and ejaculating and that M.B. may have gotten ejaculation on her. Furthermore, although Petitioner claimed that he did not ask M.B. to touch him, the [SCAWV] noted that M.B.'s mother testified that M.B. spent the night in Petitioner's care and was withdrawn and behaved differently upon returning from his care – M.B. avoided her brothers and father once home.

(ECF No. 17 at 13-14).

Based upon this evidence, the respondent contends that any potential prejudice formed by the admission of the Runyon interview of M.B. without the opportunity for cross-examination is outweighed by the petitioner's own inculpatory statements, his questionable credibility, and the corroborating testimony of the victim's mother and Ms. Runyon and, thus, the SCAWV correctly found that any alleged error was harmless beyond a reasonable doubt. (*Id.*) The petitioner's Response to the respondent's Motion for Summary Judgment states in a conclusory manner that this alleged error was not harmless beyond a reasonable doubt, and summarily asserts that, without the forensic interview, the State failed to prove its case. (ECF No. 21 at 7-8).

The petitioner has not rebutted the factual findings of the state court by clear and convincing evidence. Thus, in this federal habeas proceeding, this court is limited to reviewing the state court's decision to determine if it was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. The SCAWV essentially declined to apply the clearly-established precedent established in *Crawford* when it failed to make a finding concerning whether the subject interview was testimonial in nature. Nevertheless, even if this court were to find that the state court

unreasonably applied *Crawford* and its progeny in this case, the court must also review the finding of the state court that such alleged error was harmless.

Under the harmless error standard established in *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), which is applicable in section 2254 proceedings, the petitioner has not demonstrated that the alleged Sixth Amendment error "had a substantial and injurious effect or influence in determining the jury's verdict." On direct review, the SCAWV correctly found that the alleged Sixth Amendment error was harmless beyond a reasonable doubt, due to other evidence sufficient to support a finding of guilt. Therefore, such error was also harmless under the less-stringent standard established in *Brecht*.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the petitioner has failed to demonstrate that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law and, thus, the respondent is entitled to judgment as a matter of law on the petitioner's sole claim for habeas corpus relief. Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the respondent's Motion for Summary Judgment (ECF No. 16), **DENY** the petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1), and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation

within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on the opposing party and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit the same to counsel of record.

November 24, 2014

Dwane L. Tinsley
United States Magistrate Judge